UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JERRY BOGNER,<br><br>            Plaintiff,<br><br>   vs.<br><br>R&B SYSTEMS, INC., a Washington Corp.,<br>Renee Beal and Robert Beal, wife and<br>husband and the marital community,<br><br>            Defendants. | NO. CV-10-193-JLQ<br><br>**MEMORANDUM OPINION AND<br>ORDER RE: MOTIONS FOR<br>SUMMARY JUDGMENT** |

BEFORE THE COURT are Defendants' Motion for Summary Judgment (ECF 16) and Plaintiff's Motion for Partial Summary Judgment (ECF 32). Plaintiff filed this action on June 18, 2010, alleging that Defendants had retaliated against him for making a complaint under the Fair Labor Standards Act and asserting a claim of wrongful discharge under Washington state law. The motions were heard with telephonic argument on May 10, 2011. Defendants were represented by Kevin Roberts. Scott Kinkley and Kirk Miller appeared on behalf of Plaintiff. This Opinion is intended to memorialize and supplement the oral rulings of the court.

## I.  Introduction

Plaintiff Jerry Bogner ("Bogner") was hired in April 2008 by Defendant R & B Systems, Inc. ("R&B") to work in a convenience store owned by R&B. Defendants Robert and Renee Beal are the owners and managers of R&B, and the Beals and R&B are collectively the "Defendants." Bogner was paid hourly wages at the Washington State Minimum Wage rate.

Bogner is also a named plaintiff in a class action lawsuit against R&B that was filed on April 30, 2010 in Spokane County Superior Court. (ECF 1-1).   The state court class action alleged claims under the Washington State Minimum Wage Act.  The state court lawsuit alleged in part that employees of R&B were required to close the convenience store at midnight, lock the front doors, clock out, and then complete closing duties 'off-the-clock'. (ECF 1-1, p. 3)  It further alleged that the closing duties took approximately a half an hour and that R&B did not pay wages for time worked between midnight and 12:30 a.m.

The state court class action lawsuit was served on Renee Beal at approximately 6:15 p.m. on April 29, 2010, the day before it was filed. (ECF 1-2, Dec. of Service).  Bogner was scheduled to begin work at 2:00 p.m. on April 30, 2010.  When Bogner arrived for work on April 30, 2010, a meeting was held with Bogner, Renee Beal, and two managers, Jackie Arnold and Charlotte Dean. (ECF 48, Dec. of J. Bogner).  According to Bogner[1], Ms. Beal presented him with a handwritten piece of paper which stated: "Jerry Bogner is to start clocking on at 2:10 p.m. and clock out between 12:05 and 12:10 am.  It takes Jerry a long time to get up and down the stairs so I am giving him extra time when closing to clock out." (ECF 48-1).  Ms. Beal requested that Bogner sign the paper.  Bogner did not want to sign the piece of paper because he knew that the state court class action lawsuit had been served and he "did not want anything [he] signed to interfere with the state-court case." (ECF 48, ¶ 14).  He also did not want to alter his shift hours because the closing duties could not always be completed by 12:10 am. (ECF 48, ¶ 15).

At some point during the meeting, Mr. Beal came into the room and looked upset.

---

[1]There are disputes of fact concerning what occurred at this meeting, but for the purposes of evaluating Defendants' motion for summary judgment the facts are viewed in the light most favorable to Plaintiff and accordingly are largely taken from Plaintiff's declarations and testimony.

ORDER - 2

He "shook his finger" at Bogner and said he would take Bogner to court. (ECF 48, ¶ 17). Ms. Beal told Bogner that if he "wanted to continue working at R&B systems," he would have to agree to the shift time change. (ECF 48, ¶ 18).  Bogner told Ms. Beal he could not sign the paper, and Ms. Beal said nothing further. (ECF 48, ¶ 19).  Ms. Beal "glared" at Bogner for "several seconds" and Bogner then got up and walked off the premises. (ECF 48, ¶ 19).  Bogner avers that he left "believing" he was fired. (Id.).

There are slight factual variations concerning this April 30, 2010, meeting presented by Defendants and in Bogner's retelling.  However, before an Administrative Law Judge in October 2010, Bogner recounted succinctly: "And I said, 'I can't sign it.  I have to have counsel.' And I got up and walked out.  Simply what I did." (ECF 53-1, p. 6).  Bogner also did not report for work the next two days, days on which he was scheduled to work. (ECF 53-1, p. 13).

On June 18, 2010, Bogner commenced this lawsuit alleging that he was terminated in retaliation for filing a claim under the Fair Labor Standards Act ("FLSA") and that his termination also constituted wrongful discharge under Washington State law, as such termination was against public policy.

## II.  Summary Judgment Standard of Review

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the

ORDER - 3

nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

### III.  Defendants' Motion to Strike

On May 6, 2011, just four days before the hearing on the pending summary judgment motions, Defendants filed a Motion to Strike (ECF 66) portions of Bogner's declaration in opposition and to strike one paragraph from Bogner's declaration in support of Plaintiff's Motion for Partial Summary Judgment and Motion for Expedited hearing thereon (ECF 67).  The court GRANTS the request for expedited hearing. Bogner's declaration in support (ECF 35) was filed March 28, 2011, and Bogner's opposition declaration (ECF 48) was filed on April 11, 2011.  If Defendants believed the declarations were improper, they should have timely raised such issue in their Reply, or filed a motion to strike concurrently with their Reply.  The court has previously advised counsel in this action to avoid uncivil tactics. See Order of March 29, 2011 (ECF 43) ("Counsel are advised that courts as a body, and this court in particular, do not tolerate the petty conduct, incivility, and lack of courtesy and professionalism evident in this case so far.").

Turning now to the merits of the Motion to Strike, Defendants claim that paragraph

14 of Bogner's March 28, 2011 declaration (ECF 35) should be stricken as it is

inconsistent with his other sworn testimony and declarations.  Paragraph 14 states:

> Defendant Renee Beal told me to sign the paper anyway.  I refused again because
> my attorney was not present.  Defendant Renee Beal said signing the paper was a
> condition of working there.   I did not sign the paper and was fired.

Defendants are correct that the last sentence contains a conclusion not supported by the

facts of record-- that Bogner "was fired."  It is clear from Bogner's testimony before the

Administrative Law Judge and Bogner's subsequent declaration, that he "believed" he

was fired, but was not told he was fired.  Specifically, his sworn testimony is that after he

refused to sign the paper, "Ms. Beal did not say anything else to me," and that he "got up

and left, believing that I was fired." (ECF 48, ¶ 19).  This later declaration is also

consistent with his testimony before the Administrative Law Judge. (ECF 53-1).

Defendants also move to strike conclusions from Paragraphs 16 and 20 of Bogner's

April 11, 2011 declaration that certain acts constituted "retaliation" and were consistent

with being fired.  Defendants' argument is well-taken, that these are conclusions and not

proper facts to which an affiant can aver.  However, Defendants would have been better

suited to merely have argued such in their Reply.  At the summary judgment stage, the

court is looking for genuine disputes over material facts.  Such is not created by simply

averring that an act "was retaliation," or declaring that one's versions of events is

"consistent" with one's theory of the case.  The court will consider the declarations for the

facts contained therein, and is not bound by the legal conclusions.  The court does not

find it necessary to expunge from the record the aforementioned paragraphs of the

declarations.  The Motion to Strike is **DENIED**.

## IV. Defendant's Motion for Summary Judgment

Defendants argue that in order to establish a claim of retaliation under the FLSA,

Bogner must establish that: 1) he engaged in protected activity under the FLSA; 2)

Defendants took a materially adverse employment action; and 3) there was a causal link

between the protected activity and the adverse action. *EEOC v. Luce, Forward, Hamilton*

*& Scripps*, 303 F.3d 994, 1004-05 (9th Cir. 2002).  Defendants attack the second element

arguing that Bogner has presented no admissible evidence establishing that Defendants took a materially adverse action. (ECF 17, p. 6).

Section 215(a)(3) of the FLSA provides that it is unlawful for any person:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee

Defendants do not challenge the first or third elements which Bogner must prove. As Bogner is a named plaintiff in the state court class action alleging wage and hour violations under state law, it appears he "filed" or "caused to be instituted" a matter "related to" the FLSA, although the state court lawsuit does not specifically allege violation of the FLSA. The third element also appears to exist given the temporal proximity between the service of the state court lawsuit and the alleged adverse action by the Beals. The state court lawsuit alleged Bogner was required to work after midnight and was not paid and Ms. Beal proposed extending his shift past midnight.

The crux of this matter is the second element: did Defendants take an adverse employment action against Bogner? Clearly, if Defendants fired Bogner because of the filing of the state court lawsuit, that would constitute an adverse action. A shift change can constitute an adverse action, for example moving a day shift worker to a 'graveyard' shift in retaliation for pursuing a FLSA claim would likely constitute an adverse action.

Defendants' initial memorandum in support cited to *Ray v. Henderson*, 217 F.3d 1144 (9th Cir. 2000), which is a case of great import in resolving this issue. However, Defendants' Reply Memorandum relies exclusively on cases from the Second and Eighth Circuit in arguing that a ten-minute change in shift time is not a materially adverse action. In *Ray*, the Ninth Circuit began its Opinion by stating that it was called upon to determine whether the plaintiff had suffered an adverse employment action and held: "an adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Id.* at 1237.

Neither Bogner or the Defendants point out to the court that there is a Circuit-split

on what constitutes an adverse employment action, nor do they explain the nature of that spilt, even though the Ninth Circuit's position is outlined in *Ray*.  The First, Seventh, Tenth, Eleventh and D.C. Circuits define the phrase "broadly." *Id.* at 1240.  The Second and Third Circuits take an intermediate position which requires that the adverse action materially affect the terms and conditions of employment.  The Fifth and Eighth Circuit take the "most restrictive" approach holding that only "ultimate" actions such as hiring, firing, promotion, and demotion constitute actionable adverse employment actions. *Id.* at 1242.  The Ninth Circuit joins the broader approach of the First, Seventh, Tenth, Eleventh, and D.C. Circuits, and is informed by the EEOC Guidelines, in holding that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Id.* at 1243.  "[O]nly non-trivial employment actions that would deter reasonable employees from complaining about [FLSA] violations will constitute actionable retaliation." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

    The cases on which Defendants rely in their Reply brief, from the Second and Eighth Circuit, impose more restrictive standards in determining adverse employment action and are of little weight.

## A.  Whether the Change of Ten Minutes in Work Schedule Constituted an Adverse Employment Action?

    The Ninth Circuit in *Ray,* at least in dicta, has recognized that a shift change can be an adverse action. <u>See</u> 217 F.3d at 1242 ("While some actions that we consider to be adverse (such as disadvantageous transfers or changes in the work schedule)...."). However, obviously not all changes in the work schedule are "adverse."  Rather only a "non-trivial" change that would deter a reasonable employee constitutes an actionable adverse action.  Here, Bogner complained that he could not complete his closing duties by midnight, and needed additional time.  In response, his employer offered to accommodate that request by altering his shift by a mere ten minutes.  This did not affect the total length of his shift because he also was to start ten minutes later.

1    The Seventh Circuit, which applies the same broad approach to determining
2    adverse employment action as the Ninth Circuit, has held that a mere shift change is not
3    an adverse employment action. In *Thomas v. Potter*, 202 Fed.Appx. 118 (7th Cir. 2006),
4    the court stated: "a mere change in shift schedule which does not materially affect the
5    terms of employment cannot constitute an adverse employment action." *Id.* at 119.  A
6    change in shift schedule that is merely undesirable or inconvenient "does not rise to the
7    level of harm sufficiently serious to dissuade a reasonable worker from making or
8    supporting" a claim of retaliation. *Id.*  The Seventh Circuit stated that a change in
9    schedule could be an adverse employment action if it exploited the unique vulnerability
10   of the plaintiff, for example, changing an employee's schedule knowing that it would
11   require her to take two hours of leave per day to care for her disabled son.

12   There has been no evidence that a ten minute change in Bogner's work schedule
13   would exploit a unique vulnerability, or returning to the Ninth Circuit's language, is
14   "reasonably likely to deter employees from engaging in protected activity."  In fact, it
15   appears that extending Bogner's shift past midnight would accommodate or alleviate his
16   complaint--that he needed additional time after midnight to complete closing duties.  The
17   ten minute change in shift time, in this case, is not an "adverse employment action,"
18   where the total time of the shift remained the same and there is no evidence the change
19   exploited a unique vulnerability of plaintiff or that the change affected any other benefits
20   of Bogner's employment.  In fact, failing to comply with such a modest adjustment to
21   one's schedule could constitute insubordination and serve as a basis for termination. See
22   *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716-17 (8th Cir. 2011) (employee alleged
23   she was forced to work overtime and not allowed to record it, the court stated "[R]ather
24   than constituting an affirmative complaint that would trigger the anit-retaliation provision
25   of the FLSA, her recording of her overtime could be nothing more than mere
26   insubordination, she having been instructed to the contrary.  Insubordination is not
27   protected under the FLSA, and insubordination is not sufficient to trigger the anit-
28   retaliation provision.").

**B.  Was Bogner Terminated or Constructively Discharged?**

There is no dispute that if Bogner was terminated or constructively discharged as a result of filing the state court lawsuit, such termination would be an adverse employment action and support Bogner's claim of retaliation.   However, there is also no dispute that Defendants did not tell Bogner he was "fired", "terminated", or "discharged."  Glaring at an employee does not constitute firing an employee or constructive discharge.  Bogner's only evidence that Defendants allegedly made an affirmative statement that he could no longer work for them is Bogner's claim that he was told by Ms. Beal that if he "wanted to continue working at R&B Systems, Inc.," he would have to sign the document agreeing to the ten minute schedule change. (ECF 48 ¶ 18).

This assertion by Bogner is similar to the claim addressed in *Borja v. Hines Nurseries, Inc.,* 172 Fed.Appx. 927 (11th Cir. 2006).  Therein Borja claimed that he was "fired" when his supervisor "stated that he did not want [plaintiff] to work anymore." *Id.* at 929.  The Eleventh Circuit affirmed summary judgment for defendants and stated that what plaintiff was actually told was that he needed to get a certification from a doctor, and without that his employer did not want him to work anymore.  Instead of obtaining the certification plaintiff "left his job that day and never returned." *Id.* at 928.  The court found that when he left the job and did not return he was "deemed to have resigned" and that the "mere temporal proximity of [plaintiff's] constructive resignation to his requests for workers' compensation cannot establish the prima facie case required for a retaliation claim where the company took no affirmative action to remove [plaintiff] from the payroll until [he] abandoned his job." *Id.*

In *Saville v. IBM*, 188 Fed.Appx. 667 (10th Cir. 2006), an employee claimed that he was forced to retire in retaliation for voicing concerns over IBM's overtime policy and pay system. The court stated: "An employee cannot establish a prima facie case of retaliation without an adverse employment action." *Id.* at 669.  Retiring is an adverse action only if IBM made conditions "so intolerable that he had no other choice but to retire." *Id.*  This test looks to whether a reasonable person would view the conditions as

intolerable and is not based on the employee's subjective view. *Id.* at 670. The court affirmed the district court's grant of summary judgment, finding that no reasonable jury could conclude the conditions of employment were "so intolerable" as to render the retirement "involuntary." *Id.* The Tenth Circuit also noted that "an employer's offer of an alternative to quitting is not consistent with constructive discharge." *Id.* at 670. Here, Bogner's schedule was amended by a ten-minute change in shift time. Instead of complying with this change, he chose to walk off his shift.

Constructive discharge "occurs when the working conditions deteriorate, as a result of [retaliation], to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). Here, neither the April 30, 2010 meeting or the 10-minute shift change constituted extraordinary and egregious employment conditions. The conditions were not "so intolerable" as to force him to walk off the job. Constructive discharge is a higher hurdle for a plaintiff than establishing a hostile work environment, and a hostile work environment claim requires the plaintiff to show "severe or pervasive" conditions. "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). On the facts set forth *supra*, no reasonable jury could find that Bogner was constructively discharged.

There is no genuine dispute that Bogner was never told that he was "fired", "discharged," or "terminated." Bogner's declaration states that Ms. Beal "did not say anything else to me," and that Bogner "got up and left, believing that I was fired for refusing to sign the paper." (ECF 48, ¶ 19). Bogner was asked before the Administrative Law Judge if he was told he was "fired," and his response was: "She [Ms. Beal] didn't tell me - not in those exact words. She said if I don't sign that piece of paper, I wouldn't be

working here." (ECF 53-1, p. 12).  "[T]he mere threat of termination does not constitute an adverse employment action." *Hellman v. Weisberg*, 360 Fed.Appx. 776, 779 (9th Cir. 2009).  In *Hellman*, plaintiff, a judicial secretary, was informed that her boss, Judge Weisberg, "wanted to fire her and have her criminally prosecuted." *Id.*  The Ninth Circuit concluded that the threat of termination and criminal prosecution was not actionable adverse employment action because plaintiff was never terminated or criminally prosecuted.  Similarly, even if Ms. Beal's comments were construed as a threat of termination, such a threat is not an actionable adverse employment action.  Additionally, just as the threat of criminal prosecution in *Hellman* was not actionable, the comments by the Beals that they would take Bogner to Superior Court are not actionable.  Such alleged 'threats' of taking one to court ring especially hollow given that Bogner had already instituted state court litigation against the Beals and thus the parties were already in court.

As Bogner was not affirmatively fired, or constructively discharged, and because the 10-minute shift change was not an adverse employment action, Bogner's claim of retaliation fails and Defendants are entitled to judgment as a matter of law.  Defendants' Motion for Summary Judgment is **GRANTED**.  The court's opinion expresses no view of the related state court class action, the merits of which are not before the court.

### V. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's Motion (ECF 32), if granted, would not resolve any single claim as to any party.  Rather it seeks a declaration of law that Bogner is an "employee" and that R&B and the Beals are "employers", within the meaning of FLSA and Washington state law.  One would think that there would be no dispute that under the common sense meaning of the words, Bogner is an "employee" of Defendants, who owned the store at which he worked, and are his employers.  Neither the court, nor the parties, should expend resources resolving issues which should be readily conceded. Additionally, the motion could now be viewed as moot given that the court has granted Defendants' Motion.

Defendants filed a Response.  Page one of the Response states: "Defendants do not

dispute the legal conclusion that they were Mr. Bogner's "employer" pursuant to 29 USC § 203(d)." (ECF 52). Thus that issue was not disputed and there was no need for Plaintiff's Motion. However, Defendants appear to contest that they are "employers" within the mean of RCW § 49.46 and 49.48.

The definitions under RCW § 49.46.010, do not add much to the general common sense meaning of the terms at issue, for example:

""Employee" includes any individual employed by an employer but shall not include..."

The definition is entirely circular and unhelpful, except for its delineation of several exceptions which are <u>not</u> "employees", however, Defendants have not argued that an exception under the statute applies. Defendants argue that these terms are "immaterial"to Plaintiff's state law claim. Plaintiffs state law claim is one of alleged wrongful discharge in violation of public policy. As the court has determined *supra* that Plaintiff was not affirmatively terminated, nor was he constructively discharged, Plaintiff's state law claim must necessarily fail. Accordingly, as there is really no dispute that Defendants employed Bogner within the commonsense meaning of the word and within the context of the FLSA, Plaintiff's Motion is **GRANTED** to that extent. Plaintiff's request that the court offer a declaratory judgment on the meaning of the terms under the Washington statutes is **DENIED.**

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF 16) is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment (ECF 32) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

3. Defendants' Motion for Expedited Hearing (ECF 67) is granted. Defendants' Motion to Strike (ECF 66) is denied.

**IT IS SO ORDERED.** The clerk of the court is directed to enter Judgment in favor of Defendant dismissing Plaintiff's Complaint and the claims therein with prejudice, furnish copies to counsel, and close the file.

1     **DATED** this 12th day of May, 2011.

2                          s/ Justin L. Quackenbush

3                  JUSTIN L. QUACKENBUSH
                SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 13